# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JOHN BOBBY MCGEE, | :: | CIVIL ACTION NO. |
| Inmate # GDC 1106897, | :: | 1:04-CV-2303-TCB |
| Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| JACKIE BARRETT, | :: | PRISONER CIVIL RIGHTS |
| Sheriff, Fulton County, in her | :: | 42 U.S.C. § 1983 |
| individual and official capacities, | :: | |
| KAREN HANDEL, | :: | |
| Chairperson, Fulton County Board | :: | |
| of Comm'rs, in her official capacity, | :: | |
| CORRECTIONAL HEALTH | :: | |
| CARE SOLUTIONS, INC., | :: | |
| Defendants. | :: | |

## ORDER AND OPINION

Now before the Court are Defendants Fulton County[1] and Jacquelyn Barrett's[2]

Motion for Summary Judgment [Doc. 42], Plaintiff's Responses, with supporting

affidavits [Docs. 48, 50, 52], and Defendants' objection to Plaintiff's discovery

requests propounded to affiant Roland Lane [Doc. 49].

_____

[1]Because Karen Handel is sued only in her official capacity as Chairperson of the Fulton County Board of Commissioners, the claims brought against her are actually claims against Fulton County. See infra, Sect. IV.C.

[2]Because Jackie Barrett is no longer the Sheriff of Fulton County, her successor, Myron Freeman, "is automatically substituted as a party" with regard to the official-capacity claims against the Sheriff. See Fed. R. Civ. P. 25(d)(1); www.fultonsheriff.org. However, as discussed infra, Sect. IV.A., Plaintiff states no claim against Sheriff Freeman.

## I. BACKGROUND

In his complaint, filed on August 6, 2004, seeking compensatory and punitive damages and injunctive relief pursuant to 42 U.S.C. § 1983, Plaintiff alleged that, since being admitted to the Fulton County Jail (the Jail) on June 8, 2004, he had been housed in an area without adequate ventilation, causing him to be constantly damp with perspiration and placing him at heightened risk for "another stroke" or a "staph infection"; his meals had not conformed to the "heart healthy/diabetic" diet prescribed for him; and he had been subjected to inhumane conditions during three transfers to and from the courthouse. [Doc. 1 ¶¶ IV, V.]

In an amended complaint and supporting brief, Plaintiff alleged that Jackie Barrett, Fulton County Sheriff, and Karen C. Handel, Chairperson of the Fulton County Commission, were well aware of the inhumane conditions at the Jail. [Doc. 30; Doc. 33; see also Doc. 10 (allowing Plaintiff to amend complaint to add Chairperson Handel as official-capacity Defendant); Doc. 35 (granting motion to amend complaint to add factual details).] Plaintiff also alleged that Correctional Health Care Solutions, Inc., failed to supply him with a "heart/healthy diet, appointment to see urologist, appointment to see orthopedist, and an adequate supply of catheters and sterilization supplies for his condition," and that "[n]one of the

2

aforementioned prescriptions were filled during the five months [he] was housed at

the Fulton County Jail" from June 8, 2004, until November 2, 2004. [Doc. 33 at 8.]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings and other documents on file

"show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c)

mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary judgment

motion, a court must "view the evidence and all factual inferences therefrom in the

light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d

1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury,

however, when the inferences that are drawn from the evidence, and upon which the

non-movant relies, are implausible." Cuesta v. School Bd. of Miami-Dade County,

285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

3

there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant bears the initial burden of demonstrating that it is entitled to summary judgment. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). It may do so by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant has properly supported its motion, the non-movant must then "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in its favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). See also Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "the non-moving party must come forward with *significant, probative evidence*") (emphasis added). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

Nevertheless, "courts have been reluctant to apply" to pro se prisoners the Rule 56(e) requirement that a non-movant "cannot rely on his pleadings, but must file a response that includes other evidence." Lawrence v. Wiley, Civil Action No.

4

1:03-CV-2970-RWS, 2006 U.S. Dist. LEXIS 4917, at \*15-\*16 (N.D. Ga. Jan. 24, 2006). See also Gonzalez v. Long, 889 F. Supp. 639, 642 (E.D.N.Y. 1995) (allowing pro se prisoner additional time to respond to summary judgment motion, "mindful that *pro se* litigants should be given special latitude" in doing so, but noting that the "abject failure to comply with the requirements of Rule 56(e) and [the court's local rule] would normally require the Court to grant" the summary judgment motion).

A motion for summary judgment may be supported or opposed with "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c).[3] "As a general rule, the court may

---

[3]This Court's Local Rules provide additional requirements. "A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." N.D. Ga., LR 56.1.B.(1). The response to the motion for summary judgment "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." N.D. Ga., LR 56.1.B.(2)a.(1). "This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise

5

consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." Property Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (assuming without deciding "that authenticity and completeness are among the evidentiary requirements of Rule 56"). See also Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000) (stating that Rule 56(e) "does not *require* that all supporting material be submitted in affidavit form,"[4] and stating further that a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits") (citation and internal quotations omitted).

---

has failed to comply with the provisions set out in LR 56.1 B.(1)." N.D. Ga., LR 56.1.B.(2)a.(2).

[4]An affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence," and may be supported by "[s]worn or certified copies" of documents referred to in the affidavit. Fed. R. Civ. P. 56(e). An "unsworn declaration, certificate, verification, or statement" may be used in the place of a sworn affidavit to support or oppose a motion for summary judgment if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and dated." See 28 U.S.C. § 1746.

## III.  CONTENTS OF THE PARTIES

A.    **Defendants' motion for summary judgment**

    1.    **Statement of undisputed material facts**

Defendants allege the following undisputed material facts. [See Doc. 42 "Defendants Fulton County and Jacquelyn H. Barrett's Statement of Material Facts To Which There Are No Genuine Issues To Be Tried" (hereinafter "Defs.' Facts"); see also Doc. 42 Supp. Br at 2-5.] Roland Lane was hired in 2003 as the Chief Jailer for the Fulton County Jail and was responsible for its day to day operations. [Defs.' Facts ¶¶ 1-2; Doc. 42 Ex. 1 (Lane Aff.) ¶ 2.] During the time that Plaintiff was housed at the Jail, from June 8, 2004, until November 2, 2004, a grievance procedure was in place at the Jail. Plaintiff filed two grievances, "one concerning disbursement of his medicine and another one concerning the number of carbohydrates in his diet," but Plaintiff filed no grievances concerning the alleged "unsanitary living quarters, overcrowded cells, lack of water, poor ventilation[,] or any other such conditions." [Defs.' Facts ¶¶ 3-7; Lane Aff. ¶¶ 4, 9-10, 12 & Ex. B.]

Chief Lane "regularly met with jail personnel and contractors to discuss sanitation and maintenance issues," and he was "not aware of any problems with sanitation or ventilation" or "foods being served to inmates" at the Jail, or with "poor

7

ventilation in holding cells or inhuman[e] condition[s] with respect to court transport," during the time of Plaintiff's incarceration at the Jail. [Defs.' Facts ¶¶ 8, 13-14; Lane Aff. ¶¶ 12, 21.] Each inmate at the Jail is responsible for maintaining the cleanliness of his living area and is provided with cleaning supplies for that purpose. [Defs.' Facts ¶¶ 9-11; Lane Aff. ¶ 20.] In 2004, Fulton County was under contract with a private firm for the maintenance of the Jail's ventilation system, and work orders for the repair of any system malfunction were given priority status. [Defs.' Facts ¶¶ 15-17; Lane Aff. ¶ 5.] In addition, "[i]t is the policy and practice of Fulton County for food vendors to provide inmates with meals from nutritionists [sic] certified menus," and, during the relevant time frame, "inmates were provided with meals approved by nutritionists." [Defs.' Facts ¶¶ 25-26; Lane Aff. ¶¶ 18-19.]

Defendants state further that the holding cells in which inmates were placed in preparation for court transport were provided with ventilation, ice, a water cooler, and a toilet, and the limits on holding cell capacity established by the Fulton County Fire Marshal were not exceeded. To insure public safety, inmates were transported under restraint. The entire transport time to or from the courthouse, including the time spent assembling and searching the inmates, was approximately two hours, and

8

when inmates arrived at the courthouse they were provided water and toilet access. [Defs.' Facts ¶¶ 18-23; Lane Aff. ¶¶ 13-17.]

## 2. **Defendants' arguments**

### a. **No service of process upon Sheriff Barrett**

Defendant Barrett claims that Plaintiff never properly served her with a summons and complaint. [Doc. 42 Supp. Br. at 7.] Barrett acknowledges that the United States Marshal Service attempted to serve her personally "by leaving a copy of the complaint with a Jerome Hull at the Fulton County Jail," but she argues that this attempted service was insufficient because the Jail was not her "dwelling house or usual place of abode" and Mr. Hull was not an agent authorized to receive service of process on her behalf. [Id.; see Doc. 21 (return of service for Barrett, signed by Mr. Jerome Hull); Defs.' Facts ¶ 27; Lane Aff. ¶ 22; Fed. R. Civ. P. 4(e)(2).] Barrett states that, in the Answer of Defendant Fulton County to Plaintiff's complaint [Doc. 22], "Defendants noted that Defendant Barrett had not been served" with a copy of the complaint. [Doc. 42 Supp. Br. at 7-8; see Doc. 22 at 1 n.1.] Barrett argues that this statement in the Answer constituted sufficient notice to Plaintiff that she had not been served, and Plaintiff's failure to effect service of process in the intervening time period mandates her dismissal from this action pursuant to Fed. R. Civ. P. 12(b)(5)

9

based on the Court's lack of personal jurisdiction over her.[5] [Doc. 42 Supp. Br. at 7-10.]

### b.    No exhaustion of administrative remedies

Defendants Barrett and Fulton County argue that they are entitled to summary judgment "with respect to Plaintiff's claims regarding unsanitary living quarters, inhumane court transport conditions and poor ventilation" because Plaintiff failed to exhaust his administrative remedies with respect to those alleged violations. [Doc. 42 Supp. Br. at 11-12.]

### c.    No Eighth Amendment violations

Defendant Fulton County argues that the Jail and court transport conditions challenged by Plaintiff "are at most 'uncomfortable' and do not rise to a constitutional violation." [Doc. 42 Supp. Br. at 14.] Fulton County notes the "generalized" nature of Plaintiff's allegations regarding the overcrowding of court transports, with no details regarding dates, times, or number of inmates. [Id. at 14-15 & n. 4.] Fulton County claims that Plaintiff received "reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety," which is all that the

---

[5]Barrett also argues that, even if Plaintiff had served her, she would be entitled to Eleventh Amendment immunity from Plaintiff's claims in her official capacity and to qualified immunity in her individual capacity. [Doc. 42 Supp. Br. at 10 n.1.]

10

Eighth Amendment requires. [Id. at 16.] Fulton County argues that Plaintiff has

failed to show that any policy, custom, or practice of the County, including the

alleged underfunding of the Sheriff's Department, "led to the alleged violation of his

constitutional rights or his alleged injuries." [Id. at 18-19.] Fulton County notes that

Jail policies require nutritionist-certified meals for inmates and require inmates to

maintain the sanitation of their personal living areas. [Id. at 19.]

## B.    Plaintiff's responses

### 1.    Plaintiff's Preliminary Objection

In Plaintiff's initial response to the motion for summary judgment, he disputes

Defendants' assertion that he filed only two grievances while at the Jail.[6] [Doc. 48

¶ 4.] Plaintiff claims that he filed "many more grievances than the two (2) still

retained by the Fulton County Jail," but those grievances received no response,

perhaps because the alleged "full-time" operation to collect inmate grievances "was

never staffed," forcing Plaintiff to slide his completed grievances under the door for

delivery to the grievance officer. [Id.] Plaintiff states that he retained copies of those

additional grievances, but they were shredded upon his intake into the state prison

-----------------------------

[6]For the most part, unless otherwise noted, Plaintiff has not supported these
claims with evidence that would be admissible at a trial of these matters. See supra,
Sect. II.

11

system. [Id.; see Doc. 42 Ex. 4 Pl.'s Response to Defs.' First Interrogs. ¶ 7 (stating, under oath, that his copies of the numerous grievances he filed at Fulton County Jail were "confiscated and destroyed upon his entry into the Georgia State Prison at Baldwin as not being integral to his criminal case").] Plaintiff states that he filed grievances concerning, among other things, the inoperative ventilation fans "causing oppressive heat," a leaky toilet in his cell, the lack of daily catheters and sterilization supplies, and the inoperative air conditioner. [Doc. 48 ¶ 4.] Plaintiff supports this claim with an affidavit, which is sworn but not certified, of a fellow state prisoner, who asserts that, unlike Plaintiff, he was able to retain his own similar paperwork upon his intake into state prison only after a lengthy ordeal of intimidation and abuse. [Doc. 48 Brogdon Aff. at 1-2.]

With respect to inmate meals, Plaintiff suggests that there is a difference between having a policy of providing nutritional meals, as set forth in Defs.' Facts, and actually providing such meals. [Id. ¶ 6.] Plaintiff states that Defendants' assertion that inmates were provided with "adequate cleaning materials and supplies" is false. [Id. ¶ 7.] Plaintiff notes that Defendants' admission that this Court appointed a receiver in 2004 to, among other things, repair the air conditioner, belies their other "undisputed" material facts that conditions at the Jail were not

12

unconstitutionally deficient. [Id. ¶ 8.] Plaintiff expresses incredulity that the Chief Jailer was "not aware" of the ventilation and other problems at the Jail [id.], and, as discussed infra, the Court does also.

Plaintiff indicates that he is attempting to ascertain a proper address for Barrett's attorney of record and for Correctional Medical Associates, in order to effect service of process on these Defendants. [Id. ¶ 10.]

## 2.  Plaintiff's Objection in Chief

In Plaintiff's second response to the motion for summary judgment, he notes that he "filed all previous case-related documents upon defendant Jacquelyn Barrett via her last known attorney-of-record" by certified mail, return receipt requested, but as yet has not received the return receipts. [Doc. 50 at 2, ¶ 9.] In addition to the affidavit of Mark Jackson [Doc. 52], Plaintiff incorporates by reference the letter that Dr. Robert B. Greifinger sent to the Office of the Fulton County Attorney on May 31, 2004, describing conditions at the Jail, based on Dr. Greifinger's inspection of the Jail on May 26-27, 2004.[7] [Doc. 50 ¶¶ 2, 4.] Plaintiff also refers to a follow-up letter

------------------------

[7]After his visit to the Jail on September 7-9, 2004, Dr. Greifinger described the Jail conditions again in a September 14, 2004, letter to the Court (hereinafter, along with the May 31, 2004, letter, "the Greifinger Report"). See Harper v. Bennett, Case No. 1:04-CV-1416-MHS (filed in this Court on May 19, 2004), Doc. 89 at 4 (Consent Order, noting the agreement of the parties, including Fulton County

13

from Dr. Greifinger to the Court on July 12, 2004. [Doc. 50 ¶ 4.] See Harper v. Bennett, Doc. 35.

With respect to the exhaustion of his administrative remedies, Plaintiff notes that the plaintiff in Harper alleged that Jail officials failed to respond to numerous grievances, and indicates that two fellow Jail inmates have volunteered to give affidavits that will "not only substantiate but enhance via detailed descriptions" his own personal experiences.[8] [Doc. 50 ¶ 4.] Plaintiff relies upon the Greifinger Report and the July 12, 2004, letter to demonstrate that, among other things, the air handling systems at the Jail were overburdened and breaking down; the conditions at the Jail were so unsanitary that mold and mildew carpeted the walls and ceilings of the housing zones due to the excessive humidity; and the breakdowns in the laundry facilities created unsanitary conditions and added to the humidity. Plaintiff sums up his response to Defendants' summary judgment motion by stating that "[t]here can be no doubt that the facts asseverated by Plaintiff are the same facts observed and reported by Dr. Greifinger." [Id.]

_____

Commission Chairperson Handel and Fulton County Sheriff Freeman, that the Greifinger Report "provide[s] an adequate factual basis for the Court to assess the conditions at the Jail") & App. A (the Greifinger Report).

[8]Apparently, Plaintiff has not filed these affidavits with the Court.

14

Plaintiff acknowledges that neither the Greifinger Report nor the complaint in Harper v. Bennett addresses the treatment of Jail inmates during court transport, but states that he "is preparing a motion proposing a questionnaire of prisoners from the interval of interest in order to establish the veracity of his asseveration that said court transport was analogous to being caged in a rolling toaster oven." [Id. ¶ 8.]

The affidavit of Mark Jackson, certified under penalty of perjury, with which Plaintiff purports to support his response to Defendants' summary judgment motion, involves Mr. Jackson's incarceration at the Jail from November 2001 through February 2004. [Doc. 52 at 2.] As can be ascertained from their respective dates of incarceration at the Jail, Jackson has no personal knowledge of Plaintiff's treatment. However, Jackson describes the unsanitary conditions at the Jail, the wet and putrid air, the "maggot food" served to the inmates, the insufficient medical care, and the horrid conditions during court transfers, much of which is similar to the description of the Jail in either the Greifinger Report or Plaintiff's complaint, as amended, or both. [Id. at 2-4.]

## IV. DISCUSSION

### A. Service of process upon Barrett

Federal Rule of Civil Procedure 4(m) provides, in pertinent part, that

15

> If service of the summons and complaint is not made upon a defendant
> within 120 days after the filing of the complaint, the court, upon motion
> or on its own initiative after notice to the plaintiff, shall dismiss the
> action without prejudice as to that defendant or direct that service be
> effected within a specified time; provided that if the plaintiff shows
> good cause for the failure, the court shall extend the time for service for
> an appropriate period.

Fed. R. Civ. P. 4(m). "Rule 4(m) grants discretion to the district court to extend the

time for service of process even in the absence of a showing of good cause."

Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132-33 (11th Cir. 2005)

(concluding that the district court did not abuse its discretion in extending the time

for service of process, in light of the fact that (1) defendant "had notice of the suit

and had now been properly served" and (2) the statute of limitations would have

prevented plaintiff from re-filing the action had it been dismissed pursuant to Rule

4(m)).

When a plaintiff is allowed to proceed in forma pauperis, "[t]he officers of the

court shall issue and serve all process, and perform all duties in such cases."

28 U.S.C. § 1915(d). Therefore, Plaintiff is responsible for service of process upon

Barrett only to the extent that the Clerk of Court relies upon an in forma pauperis

plaintiff to provide the correct address where each defendant named in his complaint

is to be served. Accordingly, on January 14, 2005, after Plaintiff provided the Jail

16

as the address where Barrett was to be served, the Clerk of Court attempted to effect

service of process by mailing a request for waiver of service to Barrett at the Jail.

[See Doc. 14.] This Court takes judicial notice that, by that time, Defendant Barrett

was no longer the Sheriff of Fulton County, having been replaced by the current

Sheriff, Myron Freeman.[9] Neither Freeman nor Barrett returned the waiver of service

forms.[10] On March 4, 2005, the United States Marshal Service attempted to serve

Barrett by personally delivering the summons and complaint to Jerome Hull at the

Jail. [See Doc. 21.]

Based on the foregoing, it appears that Barrett has not been properly served.

Moreover, the current Fulton County Sheriff, Myron Freeman, is the proper

Defendant for Plaintiff's claims against Barrett in her official capacity. However,

Plaintiff may not proceed against Sheriff Freeman in his official capacity. First,

because Plaintiff was transferred from the Jail on November 2, 2004, his claims for

_____

[9]See www.fultonsheriff.org. See also "Sheriff bounced in scandal," Wash. Times, July 25, 2004 (reporting that the Governor of Georgia suspended Sheriff Barrett "only hours after a retired federal prison administrator was sworn in to take charge of the overcrowded" Fulton County Jail, and that Barrett would be on leave until her term expired on December 31, 2004).

[10]The Court notes that, although the Fulton County Sheriff has responsibility for the Jail, the Sheriff's office is apparently located at the Fulton County Courthouse. See www.fultonsheriff.org.

17

AO 72A
(Rev.8/82)

prospective relief are moot.  See McKinnon v. Talladega County, 745 F.2d 1360,

1363 (11th Cir. 1984) (stating that "[t]he general rule is that a prisoner's transfer or

release from a jail moots his individual claim for declaratory and injunctive relief").

In addition, Plaintiff may not obtain retrospective relief against Sheriff Freeman in

his official capacity.  See Purcell v. Toombs County, 400 F.3d 1313, 1325 (11th Cir.

2005) (concluding that a Georgia Sheriff "functions as an arm of the State [not the

County] when promulgating policies and procedures governing conditions of

confinement" at a county jail, and, therefore, the Sheriff was "entitled to Eleventh

Amendment immunity from [a] suit [for money damages] in his official capacity").

Therefore, although Fed. R. Civ. P. 25(d)(1) requires that Sheriff Freeman be

substituted for Sheriff Barrett to defend against Plaintiff's official-capacity claims,

that substitution would serve no useful purpose here because Plaintiff cannot proceed

on those claims against Sheriff Freeman.  Plaintiff, however, may sue Sheriff Barrett

in her individual capacity.  See Hafer v. Melo, 502 U.S. 21, 30-31 (1991).  Because

his claims against her might well be time-barred if she were dismissed from this

action for insufficient service of process, the Court will extend the time for service

upon Barrett for an additional sixty (60) days from the entry date of this Order, as set

forth infra.

18

## B.     Exhaustion of administrative remedies

"[N]o action shall be brought with respect to prison conditions under [42

U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison,

or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement 'applies to all

inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong.'

This provision entirely eliminates judicial discretion and instead mandates strict

exhaustion, 'irrespective of the forms of relief sought and offered through

administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir.

2005) (citation omitted) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002), and

Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)), cert. denied, 126 S. Ct. 2978

(2006). Furthermore, there is no futility exception to this exhaustion requirement.

See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998) (stating that "the

judicially recognized futility and inadequacy exceptions do not survive the new

mandatory exhaustion requirement" of the Prison Litigation Reform Act of 1995, and

"there is no longer discretion to waive the exhaustion requirement").

19

Attached to Chief Lane's affidavit are copies of two Inmate Grievance Forms that Plaintiff submitted while at Fulton County Jail. [Doc. 42 Lane Aff. Ex. B.] In the first grievance, dated June 30, 2004, Plaintiff complained about the discontinuation of his allocation of "metamucil twice daily to avoid bleeding hemorrhoids"; his receipt of a stool softener once, instead of twice, daily; and his "having to use [a] catheter to empty [his] bladder." [Id. Ex. B at 3.] On July 15, 2004, the "CQI Coordinator" responded to Plaintiff's complaints by detailing his medical history while at the Jail and noting that he had been given all of his requested medications and that he had "not been forced to use the catheters." [Id. at 4.] On August 4, 2004, the grievance officer reported that Plaintiff "states that he is now receiving the proper treatment," and Plaintiff acknowledged his agreement with that assessment by signing the form on that date. [Id. at 3.] Apparently, Plaintiff did not appeal this grievance to the Jail Director.[11]

On July 19, 2004, Plaintiff submitted a second grievance, complaining that "white bread, sugar, white rice, potatoes, [and] noodles" should not be served to diabetics such as himself because "these foods rank high on [the] glycemic index."

---

[11]It is not clear from the Inmate Handbook for the Jail whether the grievance procedure there is exhausted by filing an Inmate Grievance Form or by appealing to the Jail Director. [See Doc. 42 Lane Aff. Ex. E at 16-19.]

[Id. at 7.] The registered dietician for the Jail responded, on September 9, 2004, that "[i]t is within standard for you to receive carbohydrates within moderation." [Id. at 8.] Apparently, Plaintiff appealed to the Jail Director, who concluded, based on the dietician's statement, that Plaintiff's grievance had "no merit." [Id. at 9.]

Defendants claim that Plaintiff filed no grievances other than these two while at the Fulton County Jail. [Defs.' Facts ¶¶ 6-7; Lane Aff. ¶¶ 10, 12.] Plaintiff disputes this claim, however, noting that he has stated under oath in response to Defendants' interrogatories that he filed "many grievances" regarding Jail conditions that simply were never processed, and, thereafter, his copies of those grievances were shredded upon his intake into the state prison system. [Doc. 48 ¶ 4; Doc. 42 Ex. 4 ¶ 7.] The undersigned concludes that, despite Plaintiff's inability to prove with documentary evidence that he filed more than two grievances at the Jail, there is a genuine issue of material fact regarding the extent to which Plaintiff exhausted his administrative remedies with respect to the claims he raises in this § 1983 action.

## C.    **Official capacity claims**

As noted previously, a Georgia sheriff is immune from § 1983 official-capacity claims for retrospective relief with respect to jail conditions, and Plaintiff's claims for prospective relief are now moot. See supra, Sect. IV.A. Furthermore, Plaintiff's

21

official-capacity claims against Chairperson Handel are actually claims against Fulton County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (stating that an official-capacity suit against an officer generally is "only another way of pleading an action against an entity of which [the] officer is an agent," and that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity").

Fulton County may be held liable for an alleged violation of Plaintiff's constitutional rights if it "had a custom or policy that constituted deliberate indifference to [a] constitutional right," which custom or policy "caused the violation." McDowell v. Brown, 392 F.3d 1283, 1286-87, 1289-93 (11th Cir. 2004) (concluding that DeKalb County was not liable for the denial of constitutionally adequate medical care to plaintiff, based on the Board of Commissioner's alleged underfunding of the DeKalb County Jail, because (1) the "isolated incident [at issue, involving a 24-hour delay in transporting plaintiff to a hospital for treatment] . . . does not demonstrate evidence of the County's 'persistent' or 'widespread' policy of understaffing the Jail so as to delay" such transfers; (2) the incident "was not a 'highly predictable consequence' of the County's failure to budget (and hence, adequately staff) the Sheriff's Office," so that "a reasonable member of the Board

22

would conclude that the County's budget decisions would" result in the constitutional violation at issue; and (3) "a complete review of the budget decision (and the resulting understaffed Jail) [did not] reveal[] that the Board should have known that [plaintiff's] injuries were a 'plainly obvious consequence' of that decision"). See also Kentucky v. Graham, 473 U.S. at 166 (stating that "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"); Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003) (noting that a § 1983 plaintiff may establish an unconstitutional policy by identifying "either (1) an officially promulgated . . . policy or (2) an unofficial custom or practice . . . shown through the repeated acts of a final policymaker"). However, Plaintiff may not recover punitive damages from Fulton County because "a municipality is immune from punitive damages under 42 U.S.C. § 1983." See Newport v. Fact Concerts, 453 U.S. 247, 271 (1981).

In sum, Plaintiff's official-capacity claims for compensatory damages against Chairperson Handel remain viable if Plaintiff can demonstrate that his alleged injuries resulted from a custom or policy of Fulton County that constituted deliberate indifference to his constitutional rights. However, Plaintiff may not proceed against either Barrett or Freeman in their official capacities.

23

## D.     Alleged constitutional violations

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1.     Conditions of confinement

For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation–one denying the minimal civilized measure of life's necessities.   Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted).   "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," however, "extreme   deprivations   are   required   to   make   out   a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotations omitted). See also Wilson v. Seiter, 501 U.S. 294, 298 (1991)

24

(noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal

quotations omitted). Nevertheless, in order to prevail on an Eighth Amendment

challenge to his conditions of confinement, a prisoner "need not await a tragic event

before seeking relief, [but] he must at the very least show that a condition of his

confinement poses an unreasonable risk of serious damage to his future health or

safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation and

internal quotations omitted).

## 2.   Medical care

The Eighth Amendment prohibits indifference to a serious medical need so

deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle

v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted). The Supreme

Court has recognized "the government's obligation to provide medical care for those

whom it is punishing by incarceration. An inmate must rely on prison authorities to

treat his medical needs . . . . [D]enial of medical care may result in [unnecessary] pain

and suffering . . . . [that] is inconsistent" with the view that it is "just that the public

be required to care for the prisoner, who cannot by reason of the deprivation of his

liberty, care for himself." Id. at 103-04 (citations and internal quotations omitted).

25

To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002). A plaintiff may establish deliberate indifference by showing that a prison official failed or refused to provide care for his serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See Hill, 40 F.3d at 1187, 1188 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain," but that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed") (citation

26

and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

### 3. The Greifinger Report

This Court takes judicial notice of the Greifinger Report, entered on the record on December 21, 2004, as an appendix to the Consent Order in Harper v. Bennett, Case No. 1:04-CV-1416-MHS. The Fulton County Sheriff, Myron Freeman, and the Chairperson of the Fulton County Board of Commissioners, Karen Handel, sued therein in their official capacities, acknowledged that this report accurately described Jail conditions in May and September 2004. Id. Doc. 89 at 4. On May 26-27, 2004, Dr. Greifinger made his eighteenth visit to the Jail over the course of the preceding five years and "met with members of the jail staff, the medical staff, and counsel for Fulton County" to discuss his findings, which surprised no one – "it was generally acknowledged . . . that there are major problems at the Jail that make health care delivery extremely difficult. The dismal environmental conditions and poor maintenance at the Jail were also recognized by everyone." Id. App. A at 2.

Dr. Greifinger noted that "[i]t was very hot indoors" and that "[t]he air-conditioning had been broken for days." Id. Under the headings of

27

"Overcrowding and System Failures" and "Laundry," Dr. Greifinger also noted the

following:

>        The maintenance staff cannot keep up. They spend 90% of their
> time on repairs and only 10% on preventive maintenance. . . . The
> HVAC controls do not work. There are leaking pipes throughout the
> facility, broken or missing security cameras, damaged ceiling tiles and
> overflowing toilets. On 5 North, body heat alone uses more than 50%
> of the air-conditioning capacity. . . .
>
>        The laundry is in crisis. . . . The inmates are washing their own
> underwear . . . . This is unsanitary. The wet laundry further humidifies
> the air, already wet with perspiration from the crowding and the
> inadequate air handling equipment.

Id. at 4. After noting that "the quality of medical care is good," although inhibited

"by security staff vacancies and faulty mechanical systems," Dr. Greifinger offered

a series of conclusions, including the following: "[t]he overcrowding is increasing";

[t]he housing units are unsanitary"; and "[t]he air-handling systems, plumbing, and

electrical systems cannot keep up due to crowding, poor construction and

underfunded maintenance." Id. at 5-6.

On July 12, 2004, Dr. Greifinger sent a letter to the Court regarding his July

8, 2004, visit to the Jail. Harper v. Bennett, Doc. 35. In that letter, Dr. Greifinger

stated that there was "no substantial change" in the overcrowding and deficient

maintenance, and "essentially no improvement in the environmental conditions:

28

crowding, heat, humidity, sanitation, hygiene, tension." Id. at 1-2. Dr. Greifinger

noted the following:

> The air-conditioning controls are broken; the main buss has failed since
> my last visit. There is a vicious cycle of daily failures because of the
> crowding, inadequate air-handling systems, and inadequate moisture
> control. Areas of the jail have no cooling. The humidity is high and the
> growth of mold on the room surfaces and ceiling tiles continues
> unabated as a result of the excessive humidity.

Id. at 1.

After his September 7-9, 2004, visit to the Jail, Dr. Greifinger reported in his

September 14, 2004, letter to the Court that there was "a noticeable change at the

facility" since its takeover by a court-appointed receiver. Harper v. Bennett, Doc. 89

App. A at 8. However, "*[t]he major impediment to constructive change is the

County's reluctance to unfreeze vacancies*" for security staff positions at the Jail. Id.

Dr. Greifinger noted that, despite the improvements in maintenance, "[t]he heat index

in the building regularly exceeds 90 in areas where the air-conditioning is not

working. This is dangerous, especially for those who are vulnerable to heat injury

such as those with chronic diseases and those on certain medications . . . ." Id. at 9,

11. Dr. Greifinger concluded that, although "the medical care for inmates is good

29

and meets constitutional standards," "[t]he County's obstinacy regarding staffing is a persistent and ongoing danger to the serious medical needs of inmates." Id. at 14.

In his complaint, as amended, Plaintiff alleged that "[n]one of [his] prescriptions were filled during the five months Plaintiff was housed at the Fulton County Jail." [Doc. 33 at 8.] However, as noted above, Plaintiff agreed with the grievance officer's assessment that his complaints about his medical care had been rectified by August 4, 2004, at the latest. [Doc. 42 Lane Aff. Ex. B at 3.] Nevertheless, in response to Defendants' interrogatories, Plaintiff describes numerous health problems that began or were exacerbated by his stay at the Jail. [See Doc. 42 Ex. 4 ¶¶ 7-9.]

## E.   Conclusions

The Court concludes that there is a genuine issue of material fact as to whether the conditions of Plaintiff's confinement at the Fulton County Jail during the summer and early fall of 2004, including his allegedly inadequate medical care, were constitutionally deficient.   The Greifinger Report speaks for itself, especially regarding the extent to which everyone involved, including jail administrators and Fulton County officials, were aware of the serious deficiencies in Jail conditions. Accordingly, even though the Sheriff, and not the County, is responsible for the

30

operation of the Jail, the County may be liable to Plaintiff under the theory of "entrustment liability" or for failing to properly fund jail operations, thereby restricting the availability of constitutionally adequate health care. See Powell v. Barrett, 376 F. Supp. 2d 1340, 1355-56 (N.D. Ga. 2005) (Story, J.) (stating that "the Court remains of the view that a municipal body that maintains a policy of entrusting its arrestees to a jail with knowledge ["either actual or constructive"] of the unconstitutional treatment those persons will face upon their confinement there can be liable under § 1983"). See also McDowell, 392 F.3d at 1289-93 (assessing whether DeKalb County might be liable for constitutionally deficient medical care based on its alleged underfunding of the county jail). But see Powell, 376 F. Supp. 2d at 1356 (stating that a claim of deliberate indifference against Fulton County "based on the County's control over the Fulton County Sheriff's budget" is "foreclosed by Eleventh Circuit precedent" except "where a county's *own* duty to provide medical care to inmates [is] at issue"). Therefore, Chairperson Handel, i.e., Fulton County, is not entitled to summary judgment at this time.

Furthermore, the Court is at a loss to understand Chief Lane's statement, executed, sworn to, and subscribed on September 19, 2005, that he "regularly met with jail personnel and contractors to discuss sanitation and maintenance issues," but

31

was "not aware of any problems with sanitation or ventilation at the Fulton County Jail during [the relevant] time period," i.e., during the period of Plaintiff's incarceration at the Jail, from June 8, 2004, until November 2, 2004. [Lane Aff. ¶ 21.] In light of the Greifinger Report, there is no plausible explanation for this alleged lack of awareness except that Chief Lane was either inept as a jail administrator or that, in his sworn affidavit to this Court, he misrepresented the facts known to him. At the appropriate time, the Court will consider Fed. R. Civ. P. 11 sanctions against Defendants and their legal representatives for these apparent misrepresentations.

## V. DEFENDANTS' OBJECTION TO DISCOVERY

Defendants object to the discovery request Plaintiff propounded to Roland Lane on October 14, 2005 – Plaintiff's First Request of Deponent Roland Lane upon Written Questions and First Request of Deponent Roland Lane to Produce Documents Utilized in the Preparation of His 19 September 2005 Affidavit – because the request was served "almost two months" after the August 28, 2005, close of discovery in this case. [Doc. 49 at 1-2.] Noting that they have a pending motion for summary judgment, Defendants argue that allowing Plaintiff to seek discovery now "would result in an unnecessary delay of litigation and an undue burden on"

32

themselves. [Id. 2.] Defendants ask that Plaintiff's discovery request to Lane "be disallowed in its entirety." [Id. 3.]

Although Defendants assert that Plaintiff's discovery request was served upon Lane after the close of discovery in this case, they have not filed a copy of that request indicating the date of service. Moreover, although Defendants cite LR 26.2.A to support their assertion that the discovery period in this case was set to four months, neither Defendants' Preliminary Report and Discovery Plan [Doc. 28] nor this Court's Order approving that Plan [Doc. 29] specifies the length of the discovery period, and the standard discovery track for a prisoner civil rights case is zero months. See N.D. Ga., Loc. Rules App. F. Furthermore, this Court "may, in its discretion, shorten or lengthen the time for discovery." LR 26.2.B. Given this ambiguity in the record, along with the current posture of the case, the Court will disallow Plaintiff's discovery request to Lane in its entirety, as Defendants have requested, but will also re-open the discovery period, as set forth infra, so that all parties may complete any relevant discovery.

33

## VI. CONCLUSION

For the foregoing reasons --

Defendants Fulton County and Jacquelyn Barrett's Motion for Summary Judgment [Doc. 42] is **GRANTED IN PART** and **DENIED IN PART**, to the extent that --

the following claims are **DISMISSED**: (1) Plaintiff's official-capacity claims against any former, current, or future sheriff of Fulton County, including Sheriff Barrett and Sheriff Freeman, (2) Plaintiff's punitive-damages claims against Fulton County, and (3) Plaintiff's claims for prospective relief;

Sheriff Barrett's motion for summary judgment in her individual capacity is otherwise **DENIED**;

Fulton County's motion for summary judgment is otherwise **DENIED**;

the time for Plaintiff to effect service of process upon Barrett is **EXTENDED** for sixty (60) days from the entry date of this Order;

Barrett is **ORDERED** to provide to the Court and to Plaintiff, within twenty (20) days of the entry date of this Order, her current address and the name and address of any agent authorized to accept service of process on her behalf;

34

Defendants' objection to Plaintiff's discovery request propounded to Roland Lane [Doc. 49] is **GRANTED**, and the request is disallowed in its entirety; and

the discovery period in this case is **RE-OPENED**, and will terminate two months after the date when Defendant Barrett provides the Court and Plaintiff with her current address information.

**IT IS SO ORDERED**, this 31st day of August, 2006.

TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

35

AO 72A
(Rev.8/82)